**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **KEVIN COLE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 15-2175** |
| **MARLIN GUSMAN, ET AL.** | **SECTION: "J"(1)** |

## REPORT AND RECOMMENDATION

Plaintiff, Kevin Cole, a state inmate, filed this federal civil rights complaint against Sheriff Marlin Gusman, Warden Carlos Louque, Ms. Clayton, Mr. Travis, Ms. Fare, and Ms. Elder. In this lawsuit, plaintiff claims that he was subjected to unconstitutional conditions of confinement within the Orleans Parish Prison system.[1] Specifically, he stated his claims as follows: "Plaintiff suffered from soar [sic] thoart [sic], chest pain and sinus. Each official failed to help reinvigorate the inmate population."[2]

To better understand the factual bases of plaintiff's claims, the Court held a Spears hearing on July 14, 2015.[3] At that hearing, plaintiff elaborated on his claims as follows:

Plaintiff entered the Orleans Parish Prison system in December of 2014, and he began experiencing the aforementioned medical problems in April or May of 2015. He had never experienced similar problems prior to his incarceration. He attributed the medical problems to his

---

[1] Plaintiff is currently incarcerated at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.
[2] Rec. Doc. 1, p. 4.
[3] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985). "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis v. Scott, 157 F.3d 1003, 1005-06 (5th Cir. 1998). The United States Fifth Circuit Court of Appeals has observed that a Spears hearing is in the nature of a Fed. R. Civ. P. 12(e) motion for more definite statement. Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996). Spears hearing testimony becomes a part of the total filing by the *pro se* applicant. Id.

exposure to "lots of mold" on the wall in the bunk area. He additionally testified that water would back up in the showers for "two to three days."

He filed a sick call request concerning his problems; however, he was never seen in the medical department for the problems, despite the fact that a medical co-payment was deducted from his inmate account. In light of that fact, he did not submit any further sick calls regarding these medical problems, and he never received any medications for them. He was transferred from the Orleans Parish Prison system on June 2, 2015.

Defense counsel thereafter produced certified copies of plaintiff's medical records and grievance records. Those records have been filed into this federal record[4] and copies have been provided to plaintiff for his review and use in this proceeding.

I. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).[5] Regarding such lawsuits, federal law further requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

[4] Rec. Doc. 7.

[5] "[T]he term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915A(c).

Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action …
>
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re* Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability

> requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and quotation marks omitted).

Although broadly construing plaintiff's complaint,[6] and fully considering his Spears hearing testimony, the undersigned recommends that, for the following reasons, the complaint be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

## II. Plaintiff's Claims

### A. Physical Conditions of Confinement

Plaintiff was a pretrial detainee at the time he filed this lawsuit.[7] It is clear that "the Fourteenth Amendment prohibits the imposition of conditions of confinement on pretrial detainees that constitute punishment." Collins v. Ainsworth, 382 F.3d 529, 540 (5th Cir. 2004) (internal quotation marks omitted). Nevertheless, the jurisprudence recognizes that the judiciary is ill equipped to micro-manage a jail's day-to-day operations, and federal courts are therefore loath to intervene when detainees complain of trivial inconveniences. Further, such judicial restraint is appropriate because the federal constitution simply is not concerned with a *de minimis* level of imposition on pretrial detainees. Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979); Ruiz v. El Paso Processing Center, 299 Fed. App'x 369, 371 (5th Cir. 2008); Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *3 (E.D. La. Mar. 19, 2015). For the following reasons, it is apparent that the physical conditions at the jail alleged by plaintiff, while unpleasant, concern

---

[6] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

[7] See Rec. Doc. 1, p. 3.

nothing more than *de minimis* inconveniences which do not constitute "punishment" or otherwise rise to the level of constitutional violations.

Clearly, there is a point beyond which a prison's conditions are so unsanitary as to render them unconstitutional. See, e.g., Gates v. Cook, 376 F.3d 323, 338 (5th Cir. 2004) (confinement in "'extremely filthy' [cells] with crusted fecal matter, urine, dried ejaculate, peeling and chipping paint, and old food particles on the walls" was unconstitutional). That said, it must be remembered that, although prisons should be reasonably clean, "[t]he Constitution does not require that prisons be completely sanitized or as clean or free from potential hazards as one's home might be." McAllister v. Strain, Civ. Action No. 09-2823, 2009 WL 5178316, at *3 (E.D. La. Dec. 23, 2009); accord Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) ("[T]he Constitution does not mandate prisons with comfortable surroundings or commodious conditions.").

As noted, plaintiff complains that there was mold in the inmates' living area. However, the jurisprudence has repeatedly held that the mere fact that mold is present in a jail does not render an inmate's confinement unconstitutional. See, e.g., Eaton v. Magee, Civ. Action No. 2:10-cv-112, 2012 WL 2459398, at *5 (S.D. Miss. June 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); Barnett v. Shaw, No. 3:11-CV-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), adopted, 2011 WL 2214383 (N.D. Tex. June 7, 2011); Reynolds v. Newcomer, Civ. Action No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (plaintiff's complaints of "the presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the

Constitution is not concerned" (quotation marks omitted)); McCarty v. McGee, No. 2:06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation.").

Plaintiff's complaint concerning the plumbing problem fares no better. The Constitution simply does not protect inmates from "life's occasional inconveniences" of that type. See Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982); Pitt v. Weaver, Civ. Action No. 15-360, 2015 WL 2452348, at *4 (E.D. La. May 20, 2015); McKinney v. Gusman, Civ. Action No. 14-2988, 2015 WL 2341719, at *3 (E.D. La. May 13, 2015); Maddox v. Gusman, Civ. Action No. 14-2435, 2015 WL 1274081, at *4 (E.D. La. Mar. 19, 2015).

Accordingly, for all of these reasons, plaintiff's claims concerning the physical conditions at the jail should be dismissed.

B. Medical Care

Turning now to plaintiff's claim that he received no medical care for the physical ailments which allegedly resulted from those jail conditions, the undersigned notes that claim should likewise be dismissed for the following reasons.

As an initial matter, the Court notes that plaintiff has not named a proper defendant with respect to a medical claim. There is no suggestion that the named defendants played any role in denying plaintiff medical care. Moreover, they do not work in the jail's medical department, and, although Gusman and Louque hold supervisory positions within the Orleans Parish Prison system,

they cannot be held liable pursuant to 42 U.S.C. § 1983 under any theory of strict liability[8] or vicarious liability.[9]

In any event, it is clear that, even if plaintiff had named a proper defendant or were allowed an opportunity to amend his complaint to attempt to name one, his underlying medical claim would still fail. Obviously, all inmates, regardless of whether they are pretrial detainees or convicted prisoners, have a right to medical care in jail. However, that right is a limited one, and an inmate's constitutional right to medical care is violated only if his "serious medical needs" are met with "deliberate indifference" on the part of penal authorities. See Thompson v. Upshur County, Texas, 245 F.3d 447, 457 (5th Cir. 2001); Harris v. Hegmann, 198 F.3d 153, 159 (5th Cir. 1999).

The United States Fifth Circuit Court of Appeals has explained that "[a] serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." Gobert v. Caldwell, 463 F.3d 339, 345 n.12 (5th Cir. 2006). In this lawsuit, plaintiff claims that he received no medical care for a sore throat, sinus problem, and chest pain. However, a routine sore throat or sinus problem does not qualify as a serious medical need. See, e.g., Hall v. Holsmith, 340 Fed. App'x 944, 947 (4th Cir. 2009) (sinus congestion and sore throat were not serious medical needs); Payton v. Gusman, Civ. Action No. 12-2578, 2013 WL 5530280, at *11 (E.D. La. Oct. 7, 2013) ("minor sinus irritation" was not serious); Jackson v. Walton, No. 2:01-CV-0417, 2003 WL 22846399, at *2 (N.D. Tex. Nov. 20,

---

[8] Harris v. Greer, 750 F.2d 617, 618 (7th Cir. 1984) ("[T]here is no concept of supervisor strict liability under section 1983."); see also Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996); Evans v. Gusman, Civ. Action No. 08-703, 2008 WL 2223281, at *2 (E.D. La. May 23, 2008); Castillo v. Blanco, Civ. Action No. 07-215, 2007 WL 2264285, at *5 (E.D. La. Aug. 1, 2007).

[9] Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987) ("Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability."); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability."); Evans, 2008 WL 2223281, at *2.

2003) (sore throat not serious), adopted, 2004 WL 1778943 (N.D. Tex. Aug. 6, 2004). And while chest pain *can* be a serious medical need in some circumstances, it is not invariably so. Here, there is no suggestion that plaintiff, who had no history of cardiac problems[10] and who experienced no complications for the failure to treat his chest pain on this single occasion, had a type of chest pain that did in fact rise to the level of a serious medical need.

Further, one other consideration must be noted: At the Spears hearing, plaintiff testified that he submitted only one "sick call" request concerning these conditions, and he then chose not to submit another when that request went unacknowledged. Any reasonable person would be aware that paperwork can occasionally go astray in the best of jails -- and certainly in a jail as seemingly disorganized and dysfunctional as the Orleans Parish Prison. In light of that fact, it beggars belief that a prisoner would opt to stop seeking care for what he believed was a *serious* medical need simply because his first request went unacknowledged. That plaintiff, by his own admission, did so belies any suggestion that he considered his sore throat, sinus problem, or chest pain to actually be serious enough to require medical attention.

Nevertheless, *even if* one or more of the foregoing conditions could be considered a "serious medical need," plaintiff cannot show that the defendants acted with "deliberate indifference." Regarding the "deliberate indifference" requirement, the United States Fifth Circuit Court of Appeals has explained:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him

[10] As noted, plaintiff testified at the Spears hearing that he had not experienced such problems prior to his incarceration. Additionally, the Court notes that plaintiff's medical records include a "Medical Intake Screening" completed on December 2, 2014, and a "Medical History and Physical Assessment" completed on February 11, 2015. Both of those documents state that plaintiff reported no history of heart problems.

> incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

Domino v. Texas Department of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks, brackets, and citations omitted). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997); see also Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

Although plaintiff stated at the Spears hearing that he submitted a "sick call" request on one occasion complaining of these medical problems, no such "sick call" request appears in his medical records. Although those records contain "sick call" requests requesting treatment for *other* medical problems, none of those requests mentions a sore throat, sinus problem, or chest pain. Moreover, while plaintiff filed many grievances while incarcerated within the Orleans Parish Prison system, no grievances were filed alleging a lack of medical care. Lastly, there is no question that plaintiff was provided with medical examinations and treatment for various other medical conditions, including, for example, Crohn's Disease, hip and ankle problems, and mental health problems. The medical records of his examinations for those and other conditions list a variety of medical complaints from plaintiff -- but they tellingly make *no mention* of any complaints of a sore throat, sinus problem, or chest pain. These omissions are crucial because, obviously, "[a] defendant cannot be said to be deliberately indifferent to a medical need of which he/she was unaware." Marroquin v. Helen, No. C 12-617, 2012 WL 1748019, at *2 (N.D. Cal. May 16, 2012); accord Hewitt v. California, No. 1:09-cv00661, 2011 WL 2078013, at *4 (E.D. Cal. May 25, 2011)

("If the Defendant was unaware of the serious medical condition, he cannot be deliberately indifferent to it.").

## RECOMMENDATION

It is therefore **RECOMMENDED** the complaint be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[11]

New Orleans, Louisiana, this twenty-ninth day of September, 2015.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

[11] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.